UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ALLISON S., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br><br> Case No. 2:22-cv-00469 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Allison S.[1] filed this action for judicial review[2] of the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying her application for supplemental security income under Title XVI of the Social Security Act.[3] The Administrative Law Judge ("ALJ") denied Ms. S.'s application, finding she did not qualify as disabled.[4] Ms. S. argues the ALJ erred in his assessment of her residual functional capacity.[5]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the court refers to Plaintiff by her first name and last initial only.

[2] (*See* Compl., Doc. No. 5.)

[3] 42 U.S.C. §§ 1381–1385.

[4] (Certified Tr. of Admin. R. ("Tr.") 10–21, Doc. No. 15.)

[5] (*See* Opening Br. 13, Doc. No. 18.)

1

The court[6] has carefully reviewed the record and the parties' briefs.[7] Because the ALJ applied the correct legal standards and his findings are supported by substantial evidence, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provides for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision and the whole record to decide whether (1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings.[8] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principals have been followed is grounds for reversal."[9]

"[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence."[10] Although the sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[11] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] "The possibility of drawing two

---

[6] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 13.)

[7] The appeal is determined on the written memoranda, as oral argument is unnecessary. *See* DUCivR 7-1(g).

[8] 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[9] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

[10] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[11] *Id.* at 1154 (internal quotation marks omitted).

[12] *Id.* (internal quotation marks omitted).

inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[13] The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence.[14]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[15] Under the Social Security Act, an individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[16]

In determining whether a claimant qualifies as disabled within the meaning of the Social Security Act, the ALJ uses a five-step sequential evaluation. The analysis requires the ALJ to consider whether:

1) The claimant is engaged in substantial gainful activity;

2) The claimant has a severe medically determinable physical or mental impairment;

3) The impairment is equivalent to one of the impairments which precludes substantial gainful activity, listed in the appendix of the relevant disability regulation;

---

[13] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[14] *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[15] 42 U.S.C. § 1382c(a)(3)(A).

[16] *Id.* § 1382c(a)(3)(B).

4) The claimant has a residual functional capacity to perform past relevant work; and

5) The claimant has a residual functional capacity to perform other work in the national economy considering the claimant's age, education, and work experience.[17]

The claimant has the burden, in the first four steps, of establishing the disability.[18] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy.[19]

## PROCEDURAL HISTORY

Ms. S. applied for supplemental security income on November 5, 2018, alleging disability beginning on May 4, 2006.[20] The ALJ held an administrative hearing on February 9, 2021,[21] and determined additional record development and a consultative examination was necessary.[22] After a second administrative hearing,[23] the ALJ issued a decision on October 21, 2021, finding Ms. S. was not disabled and denying her claim.[24]

At step two, the ALJ found Ms. S. had a severe spine impairment and nonsevere impairments of anxiety and depression.[25] At step three, the ALJ found Ms. S.'s impairments did

---

[17] *See* 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[18] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[19] *Id.*

[20] (*See* Tr. 10.)

[21] (*See id.* at 73–99.)

[22] (*See id.* at 10, 97–98.)

[23] (*See id.* at 53–72.)

[24] (*See id.* at 10–21.)

[25] (*Id.* at 12–13.)

not meet or medically equal an impairment listing.[26] The ALJ found Ms. S. had the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk two hours and sit six hours each in an eight-hour workday; push and pull frequently; requires a sit/stand option remaining at the workstation; no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs, stooping, kneeling, crouching and crawling; occasional bilateral overhead reaching; and avoid concentrated exposure to hazards such as moving machinery or working at unprotected heights.[27]

Based on this RFC, the ALJ found Ms. S. unable to perform any past relevant work.[28] But at step five, the ALJ found Ms. S. capable of performing other jobs existing in significant numbers in the national economy.[29] Therefore, the ALJ found Ms. S. was not disabled.[30]

The Appeals Council denied Ms. S.'s request for review,[31] making the ALJ's decision final for purposes of judicial review.

## ANALYSIS

Ms. S. challenges the ALJ's residual functional capacity determination, raising three specific arguments.[32] First, she argues the ALJ improperly considered her driving ability in evaluating her mental functioning.[33] Second, she argues the ALJ's assessment of her other

---

[26] (*Id.* at 14.)

[27] (*Id.* at 15.)

[28] (*Id.* at 19–20.)

[29] (*Id.* at 20–21.)

[30] (*Id.* at 21.)

[31] (*Id.* at 1–3.)

[32] (*See* Opening Br. 13, Doc. No. 18.)

[33] (*See id.* at 13–18.)

activities of daily living was improper.[34] Third, she challenges the ALJ's evaluation of medical opinion evidence from a consultative examiner, Dr. Richard Ingebretsen.[35]

As explained below, each of these arguments fails. Although Ms. S.'s opening brief conclusorily mentions other evidence and aspects of the ALJ's RFC analysis,[36] she fails to offer meaningful argument regarding any other claim of error. Further, the record shows the ALJ applied the correct legal standards and his RFC findings are supported by substantial evidence. For these reasons, Ms. S. fails to demonstrate any error by the ALJ, and the Commissioner's decision is affirmed.

### A. Driving Ability

Ms. S. first contends the ALJ improperly considered her driving ability in evaluating her reported symptoms and limitations.[37]

The ALJ considered Ms. S.'s testimony and the function report forms she completed regarding her symptoms and limitations, including limitations in her ability to concentrate and complete tasks.[38] The ALJ found Ms. S.'s "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for several reasons."[39] The ALJ noted Ms. S. "described daily activities that are not limited to the extent one would expect, given the complaints of disabling

---

[34] (*See id.* at 18–21.)

[35] (*See id.* at 22; *see also id.* at 9–10.)

[36] (*See id.* at 21–25.)

[37] (*See id.* at 13–18.)

[38] (*See* Tr. 16; *see also id.* at 273–80, 301–08.)

[39] (*Id.* at 16.)

6

symptoms and limitations."[40] Among other activities, the ALJ noted Ms. S. was "able to drive on her own," despite her allegation that she had "severe difficulty concentrating."[41] In a footnote, the ALJ explained Ms. S.'s claim that her functional abilities were severely limited was "difficult to reconcile" with Ms. S.'s report that she continued to operate a motor vehicle throughout the period of alleged disability.[42] The ALJ described driving as a "complex task that requires the making of continuous decisions/judgment calls."[43] He noted it requires strategic, maneuvering, and control decisions—"all of which indicate functioning at a level in excess of that alleged by the claimant."[44]

The ALJ did not err in considering Ms. S.'s ability to drive in evaluating Ms. S.'s reported symptoms and limitations. Under the governing regulations, the ALJ must consider "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."[45] The Tenth Circuit has held that "[a]bility to drive an automobile, participate in some community affairs, attend school, or to do some work on an intermittent basis does not necessarily establish that a person is able to engage in a 'substantial gainful activity,' but such activities may be considered . . . , along with medical testimony, in determining the right of a claimant to disability payments."[46] And courts in this

---

[40] (*Id.* at 17.)

[41] (*Id.*)

[42] (*Id.* at 14 n.1.)

[43] (*Id.*)

[44] (*Id.*)

[45] 20 C.F.R. § 416.929(a).

[46] *Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979).

district have concluded an ALJ may properly consider a claimant's ability to drive, among other factors, in evaluating a claimant's reported symptoms.[47] Thus, it was appropriate for the ALJ to consider Ms. S.'s ability to drive in evaluating her reported symptoms and limitations.

Further, Ms. S.'s ability to drive was merely one factor among many the ALJ considered. The ALJ also found other activities of daily living inconsistent with Ms. S.'s reported limitations, including her ability to perform light household chores, prepare meals, do her own weekly shopping, dress and feed herself, and perform other personal care tasks.[48] The ALJ noted the longitudinal medical record "[did] not document notable objective findings or other evidence throughout the claimant's treatment history that would support the degree of limitation [she] has alleged."[49] Finally, the ALJ found Ms. S.'s treatment had been "essentially routine and/or conservative in nature, which demonstrate[d] that the impairments are not as limiting as has been alleged."[50] Thus, the ALJ did not rely solely on Ms. S.'s ability to drive in assessing her reported symptoms and limitations.[51] Under these circumstances, the ALJ did not err in considering Ms. S.'s ability to drive alongside other factors.

---

[47] *See, e.g.*, *Edward P. v. Kijakazi*, No. 2:21-cv-00526, 2022 U.S. Dist. LEXIS 163190, at *13–14 (D. Utah Sep. 7, 2022) (unpublished); *Randall v. Kijakazi*, No. 2:21-cv-00616, 2022 U.S. Dist. LEXIS 79855, at *11–13 (D. Utah May 2, 2022) (unpublished).

[48] (*See* Tr. 17.)

[49] (*Id.* at 16.)

[50] (*Id.* at 17.)

[51] *Cf. Lopez v. Colvin*, No. 14-735 KK, 2016 WL 10538015, at *3 (D.N.M. Apr. 6, 2016) (unpublished) (finding an ALJ's credibility findings inadequate where the ALJ "pointed only to [the claimant's] testimony regarding his ability to drive a vehicle to address [the claimant's] mental limitations").

Ms. S. also appears to argue the ALJ overstated her driving ability.[52] Ms. S. notes that she was in three car accidents between 2016 and September 2018, and she argues the ALJ failed to consider that she might be partly responsible for these accidents due to inattentiveness.[53] But Ms. S. cites no record evidence supporting the notion that she was at fault or that her inattentiveness contributed to the accidents.[54] Ms. S. also points to her testimony that her daughter drove her to appointments.[55] But the ALJ cited function reports completed by Ms. S. in February and September 2019 indicating she drove a car on her own when going out.[56] This evidence supports the ALJ's finding that Ms. S. was capable of driving during the relevant time period. Ms. S. has not demonstrated the ALJ mischaracterized her driving ability.

### B. Other Activities of Daily Living

Ms. S. next challenges the ALJ's assessment of her other activities of daily living.[57] Ms. S. suggests the ALJ mischaracterized the nature of her activities, and she argues the ALJ improperly relied on her ability to do basic household activities in finding she was capable of light work.[58]

---

[52] (*See* Opening Br. 17, Doc. No. 18.)

[53] (*Id.* at 17–18.)

[54] Indeed, the evidence Ms. S. cites indicates she was struck by another driver in two of the accidents. (*See* Tr. 48, 363.)

[55] (*See* Opening Br. 17, Doc. No. 18; *see also* Tr. 85.)

[56] (*See* Tr. 276, 304.) The second form indicated she also sometimes rode in a car, and she "trie[d] to take one of her kids w[ith] her if she [could]." (*Id.* at 304.)

[57] (*See* Opening Br. 18–21, Doc. No. 18.)

[58] (*See id.*)

9

In evaluating whether a claimant's symptoms are consistent with the objective medical evidence and other evidence, the ALJ must "consider all of [the claimant's] statements about [her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [her] activities of daily living and [her] ability to work."[59] The ALJ must also consider "all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [her] symptoms affect [her]."[60]

The ALJ noted that "despite alleging that severe pain and other symptoms prevent her from working, [Ms. S.] reported that she [was] able to perform light household chores, prepare meals, and do her own weekly shopping," citing her February and September 2019 function reports.[61] And "while she indicated that she has some difficulty caring for her hair and bathing, she is able to dress, feed herself, toilet, and perform other personal care tasks without issue."[62] He also noted Ms. S. was able to "manage her finances without difficulty," citing the same reports.[63] The ALJ concluded "the ability to engage in such activities is indicative of a higher level of functioning than has been alleged and is inconsistent with total disability."[64]

The function reports cited by the ALJ generally support the ALJ's findings, although they also contain some qualifying statements which the ALJ did not address. For example, on the

---

[59] 20 C.F.R. § 416.929(a).

[60] *Id.*

[61] (Tr. 17 (citing *id.* at 273–80, 301–08).)

[62] (*Id.* (citing *id.* at 273–80, 301–08).)

[63] (*Id.* (citing *id.* at 273–80, 301–08).)

[64] (*Id.*)

September 2019 form, Ms. S. indicted she only cooked simple foods and frozen foods, and her kids often had to "fend for themselves" because it was hard for her to cook.[65] She indicated she couldn't do many household chores, and everyone did their own laundry.[66] She stated she always took a child shopping with her so she didn't have to put things in the cart[67] (although she indicated on the February 2019 form that she shopped on her own).[68] Ms. S. also testified at the hearing that she needed her daughter's help to get out of bed and get out of the bath, and that she had to "hold onto things to get around."[69] She reported similar limitations to consultative examiners, stating: "I get up and I try to clean and I sit back down. I get up to cook and I sit back down."[70] Although this evidence suggests some limitations in the manner in which Ms. S. was able to perform these activities, it does not render the ALJ's statements regarding her activities of daily living inaccurate. Overall, the evidence cited in the decision supports the ALJ's finding that Ms. S. was able to perform light household chores, prepare meals, shop, and perform personal care tasks.

Moreover, the ALJ did not rely solely on Ms. S.'s activities of daily living in assessing Ms. S.'s self-described symptoms or her capacity for light work. As noted above, the ALJ found Ms. S.'s alleged degree of limitation was inconsistent with the lack of objective findings in the

---

[65] (*Id.* at 303.)

[66] (*Id.*)

[67] (*Id.* at 304.)

[68] (*Id.* at 276.)

[69] (*Id.* at 83.)

[70] (*Id.* at 611; *see also id.* at 759 (stating she could "only do very light work and cook simple meals").)

longitudinal record, as well as the routine and conservative nature of her treatment.[71] Ms. S. does not challenge these findings or the evidence supporting them. Thus, the ALJ properly considered both the objective medical evidence and other evidence, such as activities of daily living, in assessing Ms. S.'s self-described limitations.[72] Further, the ALJ relied on the prior administrative medical findings of state agency medical consultants who opined that Ms. S. was capable of light work.[73] The ALJ found these opinions persuasive,[74] and Ms. S. does not challenge the ALJ's evaluation of them. Accordingly, contrary to Ms. S.'s argument, the ALJ did not rely solely on Ms. S.'s ability to perform basic household tasks in finding her capable of light work. The activities of daily living were merely one factor, among many, which the ALJ properly considered in determining Ms. S.'s RFC.

For these reasons, Ms. S. has demonstrated no error in the ALJ's assessment of or reliance on her activities of daily living in his RFC assessment.

### C. Dr. Ingebretsen's Medical Opinion

Ms. S. next challenges the ALJ's evaluation of the medical opinion of Dr. Richard Ingebretsen, a consultative examiner.[75]

Under the regulations applicable to claims filed after March 27, 2017, like Ms. S.'s, an ALJ must assess the persuasiveness of all medical opinions and prior administrative medical findings based on the following factors: (1) supportability (the extent to which the opinion is

---

[71] (*See id.* at 16–17.)

[72] *See* 20 C.F.R. § 416.929(a).

[73] (*See* Tr. 19.)

[74] (*See id.*)

[75] (*See* Opening Br. 9–10, 22, Doc. No. 18.)

supported by underlying medical evidence and explanations); (2) the consistency of the opinion with other medical and non-medical sources; (3) the relationship with the claimant (including the length, frequency, purpose and extent of the relationship, and whether it was an examining relationship); (4) any specialization; and (5) any other relevant factors.[76] The most important factors are supportability and consistency, and the ALJ is required to explain how she evaluated those two factors.[77]

Dr. Ingebretsen performed a physical consultative examination in May 2021, following the first administrative hearing.[78] Based on his examination, Dr. Ingebretsen opined that Ms. S. was limited to a reduced range of light work involving sitting up to four hours; standing and walking up to two hours each; occasional manipulative activities with her right hand and frequent manipulative activities with her left hand; no climbing ladders or scaffolds; no kneeling, crouching, or crawling; and occasionally climbing stairs and ramps, balancing, and stooping.[79] He also opined Ms. S. was restricted to no work at unprotected heights; occasional exposure to moving mechanical parts, operating a motor vehicle, humidity, wetness, pulmonary irritants, extreme cold and heat, and vibrations; and moderate noise exposure.[80]

The ALJ found this opinion had "little persuasive value because it [was] internally inconsistent in many ways."[81] The ALJ noted, for example, that "to support occasional

---

[76] 20 C.F.R. § 416.920c(b), (c)(1)–(5).

[77] *Id.* § 416.920c(b)(2).

[78] (*See* Tr. 18, 759–70.)

[79] (*See id.* at 765–68.)

[80] (*See id.* at 769.)

[81] (*Id.* at 18.)

13

manipulative restrictions bilaterally, the assessment notes only that the claimant had 'some pain on motion of the rights shoulder.'"[82] The ALJ also found the opined restrictions were inconsistent with the objective examination findings, which indicated Ms. S. had full range of motion and normal strength in her bilateral upper extremities.[83] The ALJ also noted "there [was] no observable reason for noise restrictions, operating a motor vehicle, and many of the other environmental limitations."[84] Finally, the ALJ found the opinion unpersuasive because it was inconsistent with other medical records showing Ms. S. had a "full range of motion, full strength, otherwise intact sensation, intact cranial nerves, no swelling, and normal pulses."[85]

The ALJ applied the correct legal standards to Dr. Ingebretsen's opinion, and he explained how he considered the supportability and consistency factors as required. Further, his findings regarding these factors are supported by substantial evidence, including inconsistencies between Dr. Ingebretsen's assessed limitations and examination findings,[86] a lack of supporting

---

[82] (*Id.* at 18 (quoting *id.* at 767).)

[83] (*Id.*; *see also id.* at 761–62.)

[84] (*Id.* at 18.)

[85] (*Id.* (citing *id.* at 349, 390, 394, 410, 753, 773, 781–82).)

[86] (*Compare id.* at 761–62 (examination findings indicating a full range of motion in all areas except right shoulder abduction, and full strength) *with id.* at 767 (opining Ms. S. was limited to occasionally reaching, handling, fingering, feeling, pushing, and pulling with her right hand and frequently doing the same activities with her left hand).) The ALJ misstated Dr. Ingebretsen's opinion as limiting Ms. S. to occasional manipulative activities with both hands. (*See id.* at 18.) Nevertheless, even the less restrictive limitation to frequent manipulative activities on the left is unsupported by the examination findings or other rationale on the assessment form. Thus, this misstatement does not undermine the ALJ's finding that Dr. Ingebretsen's opined manipulative limitations were inconsistent with the examination findings.

rationale on the assessment form for certain limitations and restrictions,[87] and inconsistency with other medical records.[88] Thus, the ALJ did not err in his evaluation of Dr. Ingebretsen's opinion.

Ms. S. argues Dr. Ingebretsen's opinion "was not totally based on his examination, but his understanding of Ms. [S.]'s treatment and other examinations and what limitations would best treat her condition."[89] But Ms. S. does not support this assertion with any citation to evidence in the record. Elsewhere, Ms. S. asserts Dr. Ingebretsen and other providers gave opinions based on her "medical condition," citing evidence which she claims shows "very remarkable spine conditions."[90] But she does not explain how the cited evidence and diagnosed spine conditions support Dr. Ingebretsen's opinion regarding specific functional limitations. Even assuming this evidence does support Dr. Ingebretsen's opinion, such evidence does not render the ALJ's evaluation erroneous. Where, as here, the ALJ's findings are supported by substantial evidence, the court will not reweigh the evidence.[91]

Ms. S. also asserts the ALJ "carefully picked over" Dr. Ingebretsen's opinion by incorporating certain limitations while ignoring others.[92] But the ALJ was not required to incorporate all of Dr. Ingebretsen's opined limitations where the ALJ validly found Dr.

---

[87] (*See, e.g.*, *id.* at 769 (providing no rationale for environmental restrictions).

[88] (*See, e.g.*, *id.* at 349 (noting full range of motion in September 2018), 410 (noting no joint pain, muscle pain, or decreased range of motion in June 2019), 753 (noting normal range of motion and strength in January 2021), 773 (noting normal range of motion and strength in July 2021).)

[89] (Opening Br. 22, Doc. No. 18.)

[90] (*Id.* at 23–25 (citing Tr. 382, 400).)

[91] *See Langley*, 373 F.3d at 1118.

[92] (*See* Opening Br. 9–10, Doc. No. 18.)

Ingebretsen's opinion unpersuasive. Moreover, the ALJ did not "ignore" the assessed limitations—rather, he provided valid reasons for finding them unpersuasive, which were supported by substantial evidence.

For these reasons, Ms. S. has demonstrated no error in the ALJ's evaluation of Dr. Ingebretsen's opinion.

### D. Other Issues

Ms. S.'s opening brief conclusorily mentions other evidence and aspects of the ALJ's RFC analysis, but she fails to provide meaningful argument regarding any other claim of error.

For example, in one sentence of the opening brief, Ms. S. notes that although the ALJ found she had nonsevere impairments of depression and anxiety, no limitations related to mental impairments were included in the RFC.[93] But Ms. S. offers no argument regarding what limitations should have been included, and she does not identify evidence supporting limitations related to mental impairments. Because Ms. S. fails to meaningfully brief this issue, it is waived.[94]

Ms. S. also asserts she had "very remarkable spine conditions that gave rise to those symptoms, restrictions, and ameliorative conditions assessed by treating and consulting doctors," followed by citations to records regarding various diagnosed spine conditions.[95] But Ms. S. fails to offer a cogent argument connecting this assertion to any claim of error by the ALJ. She does not expressly argue the ALJ erred in his evaluation of medical opinion evidence, other than Dr.

---

[93] (*See* Opening Br. 25, Doc. No. 18.)

[94] *See Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1031 (10th Cir. 2007) ("Where an appellant lists an issue, but does not support the issue with argument, the issue is waived on appeal.").

[95] (Opening Br. 23–25, Doc. No. 18 (citing Tr. 382, 400).)

16

Ingebretsen's opinion discussed above. And she fails to explain how the evidence she cites is inconsistent with the ALJ's RFC determination. Because Ms. S. fails to offer meaningful argument related to the spine condition evidence cited in the opening brief, this issue is waived.[96]

The opening brief contains no meaningful argument regarding any other claim of error by the ALJ. Considering the whole record, it is apparent the ALJ applied the proper legal standards in determining Ms. S.'s RFC, and his finding are supported by substantial evidence cited in his decision. As discussed above, this includes Ms. S.'s activities of daily living, the state agency medical consultants' opinions, and other medical evidence inconsistent with Ms. S.'s self-described limitations.[97] Accordingly, Ms. S. fails to demonstrate any error by the ALJ.

## CONCLUSION

The Commissioner's decision is AFFIRMED.

DATED this 16th day of August, 2023.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[96] *See Christian Heritage Acad.*, 483 F.3d at 1031.

[97] (*See* Tr. 15–19.)